Filed 10/14/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Quentin H. et al., Persons Coming Under the Juvenile Court Law. | B253816 |
| | (Los Angeles County Super. Ct. No. DK00500) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| RICHARD H., | |
| Defendant and Appellant. | |

　　　　APPEAL from an order of the Superior Court of Los Angeles County, Veronica S. McBeth, Judge.  (Retired Judge of the L.A. Sup. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed and remanded with directions.

　　　　Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Welfare and Institutions Code section 355.1, subdivision (d),[1] creates a rebuttable evidentiary presumption that a parent who has previously been convicted of sexual abuse as defined in Penal Code section 11165.1 or is required as the result of a felony conviction to register as a sex offender pursuant to Penal Code section 290 poses a substantial risk of harm to a child in his or her care or custody. The prior sexual abuse conviction functions as prima facie evidence of risk and imposes on the parent the burden of producing some evidence to show he or she does not pose a substantial risk of harm to the child. If evidence is introduced that would support a contrary finding, the presumption disappears; and the matter must be determined based on all the evidence presented, including the fact of the prior conviction and reasonable inferences derived from it.

Richard H., father of eight-year-old Quentin H. and six-year-old Linda H., appeals from the jurisdiction findings and disposition order declaring his children dependents of the juvenile court. Richard, who was convicted in 1987 of sexual abuse of a child under 14 years old, contends the court erred in basing its jurisdiction findings on the section 355.1 presumption of risk. We agree Richard adequately rebutted the presumption of current dangerousness by identifying contrary evidence in the Department's own reports. Because the juvenile court improperly relied solely on the presumption to sustain the allegations in the dependency petition relating to Richard, rather than evaluating the totality of the evidence in the record, we reverse and remand with directions to the juvenile court to consider the evidence without regard to the section 355.1 presumption.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dependency Petition*

On August 19, 2013 the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition alleging Natasha W., mother of

---

[1]     Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

Quentin, Linda, then 16-year-old Marcus W. and then 10-year-old S.H.,[2] had a history of illicit drug use and was a current user of cocaine and marijuana, making her incapable of caring for her children. As to Richard, who had not lived in the family home since his relationship with Natasha had ended several years earlier but who still visited regularly with Quentin and Linda, the petition contained counts under section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse), alleging in identical language solely that his conviction in 1987 (when he was 18 years old) for forcible oral copulation with a minor under 14 years old (Pen. Code, § 288a) and status as a registered sex offender endangered his children.[3] Quentin, Linda and their older siblings were detained following a detention hearing.

2. *The Jurisdiction and Disposition Hearing*

At the January 8, 2014 hearing Natasha signed a waiver of rights and submitted the issue of jurisdiction to the court based on the Department's social study reports. The jurisdiction report and last-minute information provided to the court identified Richard's sexual abuse conviction and also recounted his more recent failure to register as a sex offender, an offense for which he was convicted in 2013 and sentenced to probation. Richard's probation officer told social workers there were no restrictions on Richard's ability to be with his children, although he also stated it was generally the policy of the probation department to require monitored visitation for sex offenders.

The jurisdiction report also included statements from Marcus and S.H. to social workers that Richard had lived with them for a substantial amount of time while he and their mother were romantically involved and Richard had not engaged in any inappropriate conduct with either one of them or with their siblings in their presence. Quentin and Linda also told social workers Richard had always behaved appropriately

---

[2]    Marcus and S.H. are not Richard's children. Although they were declared dependent children of the court based on their mother's conduct, neither is a subject of this appeal.

[3]    A first amended petition was filed on November 15, 2013. The subdivision (b) and (d) counts concerning Richard were unchanged.

with them and they felt safe in his care. Natasha told social workers she had never witnessed Richard behave inappropriately with any of her children and none of them had complained about him. Richard told social workers he did not commit sexual abuse in 1987 and had been falsely accused.

Richard denied the allegation he was a danger to his children and moved to dismiss the petition for lack of evidence. Although he did not request a trial or introduce any additional evidence, he argued the evidence in the Department's own reports, including the staleness of his sexual abuse conviction and statements from Natasha and his children, showed he was not a danger to his children. Quentin and Linda's counsel agreed the evidence as to Richard was too insubstantial to support jurisdiction.

The Department, however, argued Richard's prior conviction and status as a registered sex offender, coupled with the absence of any evidence he had received rehabilitative therapy since his 1987 conviction, were sufficient to find him a danger to his children. It also argued the passage of time since Richard's qualifying conviction was insufficient to rebut the section 355.1 presumption of risk.

The court sustained the allegations in the petition as to both Natasha and Richard and found Quentin and Linda to be persons described by section 300, subdivisions (b) and (d). As to Richard, the court stated the prior sex abuse conviction was prima facie evidence he was a danger to his children and that the passage of time since his conviction was, by itself, insufficient to rebut that presumption. The court determined that, apart from emphasizing the staleness of the conviction, Richard had failed to present any other evidence to rebut the section 355.1 presumption.[4] The court did not address the evidence in the jurisdiction report Richard had cited to rebut the presumption.

At the disposition hearing conducted the same day, the court declared Quentin and Linda dependent children of the court and released them to Natasha with family

---

[4]     The court stated, "I think it [the prior conviction] places the children at risk of harm without any other evidence to show me that the children are not at risk of harm. I do not have any such evidence before me except for the fact that it happened [more than] 20 years ago."

4

maintenance services to address the issues that had led to the assertion of dependency jurisdiction. The court removed Quentin and Linda from Richard's care and custody and ordered services for him, including monitored visitation, participation in sexual abuse counseling for perpetrators, drug testing and a parenting class.

## DISCUSSION

### 1. *We Exercise Our Discretion To Consider Richard's Jurisdiction Challenge*

The Department urges this court to refrain from considering Richard's appeal because jurisdiction over Quentin and Linda is proper based solely on the court's findings regarding Natasha's conduct. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; "the minor is a dependent if the actions of either parent bring [him or her] within one of the statutory definitions of a dependent"]; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [same].) However, when, as here, the outcome of the appeal could be "the difference between father's being an 'offending' parent versus a 'non-offending' parent," a finding that could result in far reaching consequences with respect to these and future dependency proceedings, we find it appropriate to exercise our discretion to consider the appeal on the merits. (See *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763; *In re D.P.* (2014) 225 Cal.App.4th 898, 902; *In re I.A.,* at p. 1494.)

### 2. *Standard of Review*

Ordinarily we review the juvenile court's jurisdiction findings and disposition orders for substantial evidence. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 966; *In re R.C.* (2012) 210 Cal.App.4th 930, 940.) Under this standard "[w]e review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible." (*In re David M*. (2005) 134 Cal.App.4th 822, 828; accord, *In re Drake M., supra,* 211 Cal.App.4th at p. 763.)

Here, however, in making its jurisdiction finding the court relied solely on the evidentiary presumption contained in section 355.1. The question whether the statute

was properly applied in light of undisputed contrary evidence and, if not, whether the Department had met its duty at the jurisdiction hearing to show by a preponderance of the evidence that Quentin and Linda were children described by one of the subdivisions of section 300, are legal questions subject to de novo review. (See *Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 682 [question whether Board properly followed statute requiring shifting burden of proof in accordance with rebuttable presumption affecting burden of proof is legal determination reviewed de novo]; see generally *Howe v. Seven Forty Two Co., Inc.* (2010) 189 Cal.App.4th 1155, 1163 ["'[t]he mere introduction of evidence sufficient to sustain a finding of the nonexistence of the presumed fact causes the presumption, *as a matter of law*, to disappear'"] italics added.)

3. *Richard Adequately Rebutted the Presumption Contained in Section 355.1; Remand Is Necessary for the Juvenile Court To Properly Consider the Question of Jurisdiction*

a. *Governing law*

Section 355.1 provides that a parent or guardian's prior conviction of sexual abuse as defined in Penal Code section 11165.1 or the parent's legal obligation to register as a sex offender as a result of a felony conviction pursuant to Penal Code section 290 constitutes "prima facie evidence in any proceeding that the [child who is the subject of the dependency proceeding] is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence."[5]

The effect of a presumption affecting the burden of producing evidence is well established: It "require[s] the trier of fact to assume the existence of the presumed fact

---

[5] When it enacted section 355.1, subdivision (d), "the Legislature found 'that children of the State of California are placed at risk when permitted contact with a parent or caretaker who has committed a sex crime.'" (*In re I.J.* (2013) 56 Cal.4th 766, 779; see *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 222 Cal.App.4th 149, 161 ["'the purpose of [§ 355.1, subd. (d)] is to ensure that information regarding [prior sex abuse convictions] is appropriately considered by the juvenile court in determining whether a child is in need of juvenile court dependency protection'"]; *In re John S.* (2001) 88 Cal.App.4th 1140, 1145 [same].)

unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604; see *In re A.S.* (2011) 202 Cal.App.4th 237, 242-243; *Farr v. County of Nevada*, *supra*, 187 Cal.App.4th at p. 681 ["[a] rebuttable presumption affecting the burden of producing evidence 'is merely a preliminary assumption in the absence of contrary evidence, *i.e.*, evidence sufficient to sustain a finding of the nonexistence of the presumed fact'"; "'[i]f contrary evidence is introduced then the presumption has no further effect and the matter must be determined on the evidence presented'"]; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 693 [same].) Once rebutted, the presumed fact may still be considered by the fact finder, as well as any reasonable inferences to be derived therefrom (see Evid. Code, § 604 ["[n]othing in this section shall be construed to prevent the drawing of any inference that may be appropriate"]), but without regard to the benefit of the presumption. (*In re Heather B.* (1992) 9 Cal.App.4th 553, 561; *Farr,* at p. 682; *In re A.S.,* at pp. 242-243.)[6]

---

[6] A presumption affecting the burden of producing evidence is thus significantly different from one affecting the burden of proof. A presumption affecting the burden of producing evidence is a preliminary assumption, rooted in common experience, which is designed to dispense with the need for proof. (*Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 635.) It disappears once contrary evidence is introduced whether or not the contrary evidence is sufficient under the appropriate standard of proof to disprove the presumed fact. (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 826; *Fisher v. City of Berkeley, supra,* 37 Cal.3d at p. 693; see Evid. Code, §§ 603-604.) A presumption affecting the burden of proof, in contrast, is designed to implement some public policy; it places on the party against whom it operates the affirmative obligation to disprove the presumed fact by a preponderance of the evidence, unless a different standard of proof is required by law. (*Farr v. County of Nevada, supra,* 187 Cal.App.4th at p. 681; see *People v. Dubon* (2001) 90 Cal.App.4th 944, 953; Evid. Code, § 606.)

b. *The record contained contrary evidence rebutting the presumption; the court erred in applying the section 355.1 presumption rather than weighing the evidence to determine whether the Department had met its burden of proof*

Richard argues the court improperly relied on the section 355.1 presumption to find under section 300, subdivisions (b) and (d), that Quentin and Linda were in danger of being sexually abused even though he had adequately rebutted the presumption with evidence contained in the Department's own reports, including statements from his children, their older siblings and their mother, that he had not behaved inappropriately with any child in his care, and the fact that he had not reoffended in the more than 20 years since he had been freed from custody.

Initially, Richard contends the court erred in determining the passage of time since his conviction was, by itself, insufficient to rebut the statutory presumption of risk of harm and urges this court to reject the authorities that have held, expressly or implicitly, otherwise. (See *Los Angeles County Dept. of Children & Family Services* (2013) 222 Cal.App.4th 149, 162 (*Los Angeles County*) ["length of time that had passed since father's earlier sex crimes, taken alone, is not enough to overcome the presumption"]; cf. *In re John S.* (2001) 88 Cal.App.4th 1140, 1146 [holding presumption properly triggered as to father whose prior conviction requiring his registration as a sex offender occurred more than 13 years earlier].) Although not cited by Richard or addressed by the authorities that have rejected his position, there is some support in the legislative history for his argument. In particular, staff comments explaining the legal effect of the presumption specifically identify the staleness of the conviction as some evidence rebutting the presumption of risk: "The person with the history of serious sexual abuse is not required to prove that he or she poses no danger to the minor. Rather, the person with the history of sexual abuse is only required to provide 'some evidence' that there is no risk to the minor. In other words, even if the evidence is such that it is more likely than not that the person is a significant risk to the minor, the presumption in this bill could still be negated by a mere showing of some evidence to the contrary. Once the presumption is negated, the status quo ante is reestablished and the social worker or other court

8

appointed professional must provide clear and convincing evidence of abuse or neglect before the minor can be made a dependent of the court. [¶] Only if the person has a *recent* conviction for a serious sexual offense involving a child (it must be both recent and involve a child or there would then be 'some evidence' that there is no risk to the child in question), and the person was unable to present any evidence to show that there was no risk to the child, only then would the prima facie evidence translate into a basis for the juvenile court to assert jurisdiction over the minor." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 208 (1999-2000 Reg. Sess.) as amended May 13, 1999, italics added.)

Despite Richard's invitation, we need not resolve the question whether and under what circumstance the age of a conviction, alone, may be sufficient to overcome the presumption because the record here contains sufficient additional evidence to rebut the presumption—evidence the Department and the juvenile court ignored. To be sure, Richard did not present any witnesses or submit documentary evidence (for example, a current psychological assessment) to demonstrate he posed no danger to his children. But to the extent the Department contends that failure equates to the absence of evidence to rebut the presumption, it is simply wrong: Richard may satisfy his burden by relying on information in the Department's own reports, which were admitted into evidence. (See *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1041 [father could rebut § 355.1 presumption with evidence in social worker's report]; *In re D.P. supra,* 225 Cal.App.4th at p. 904 [considering whether there was sufficient evidence in jurisdiction report to rebut § 355.1 presumption].)

The question is not whether Richard was the party that introduced the evidence, but whether he identified contrary evidence in the record. (See *In re Heather B., supra,* 9 Cal.App.4th at p. 561 ["A presumption affecting the burden of producing evidence requires the ultimate fact to be found from proof of the predicate facts in the absence of other evidence. If contrary evidence is introduced then the presumption has no further effect and the matter must be determined on the evidence presented."]; *Farr v. County of Nevada, supra,* 187 Cal.App.4th at p. 681 [same].) Richard identified statements from

9

Natasha and all four children in the jurisdiction report attesting to his proper parenting. Had Richard called Natasha and the children as witnesses, there would be no question that he had satisfied his burden of production. There is no basis in these dependency proceedings to treat his reliance on their statements in the Department's reports any differently from live testimony. (See § 355, subd. (b) [subject to certain limited exceptions, social study prepared by petitioning agency constitutes competent evidence that may be considered at jurisdiction hearing]; *In re Lucero L.* (2000) 22 Cal.4th 1227, 1242-1243 [hearsay statements of minor child contained in social studies are admissible even if minor would otherwise be incompetent to testify]; *In re E.B.* (2010) 184 Cal.App.4th 568, 577 [social study is legally admissible evidence on which the court may rely at a jurisdiction hearing "'despite the fact that a social study is itself hearsay and may contain multiple levels of hearsay'"].)

*In re John S., supra,* 88 Cal.App.4th 1140, cited by the Department, does not hold to the contrary. *In re John S.* addressed whether the section 355.1 presumption applies to noncustodial parents. After deciding the only question presented and determining the presumption was properly triggered in a case involving a noncustodial father, the court added, "We emphasize that the presumption in the statute is not conclusive and affects only the burden of producing evidence. Appellant was free to present evidence that his status as a registered sex offender did not place the minor at substantial risk of abuse or neglect. Appellant did not do so, instead relying only upon the evidence in the social worker's report and reasonable inferences therefrom to oppose an adverse jurisdictional finding." (*In re John S.*, at pp. 1145-1146.) The opinion did not describe, let alone evaluate, the evidence in the jurisdiction report. In context, the cited language means only the information in the social worker's report in that case was insufficient to defeat the presumption. It does not stand for the general proposition that a parent cannot rely on information in the Department's own reports to satisfy its burden of production.

Here, as explained, Richard properly relied on the statements from his children and from Natasha's two older children, set forth in detail in the Department's reports, that he has always behaved appropriately with each of them, including during the substantial

10

periods he was alone with them. This "negative evidence"—evidence of absence of the conduct at issue by persons in positions to know of or observe the conduct—is certainly relevant to whether he was a current risk to his children. (See 1 Wharton's Criminal Evidence (15th ed. 1997) § 4.6, pp. 302-303 [negative evidence is relevant and admissible when it tends to prove the nonexistence of a material fact when the person testifying was in a position to hear or see the relevant fact]; see also *Hamilton v. Pacific E.R. Co.* (1939) 12 Cal.2d 598, 604-605 [evidence that plaintiff was in a position to observe whether inspection occurred, and did not observe person entering or departing waiting room where plaintiff slipped and fell, was relevant evidence from which a jury could infer no inspection of the waiting room had occurred]; *Lahey v. Southern Pacific Co.* (1936) 16 Cal.App.2d 652, 661 ["negative testimony or testimony of witnesses that they did not hear the ringing of a bell or the sounding of a whistle is admissible and sufficient to support a verdict of the jury as to the nongiving of signals"].) Even discounting the statements of Quentin and Linda, who are quite young, Marcus and S.H., as well as Natasha, were certainly in positions to observe Richard's conduct during the time he resided with them or visited with his children in their presence.

 *Los Angeles County, supra,* 222 Cal.App.4th 149, on which the juvenile court (and the Department) relied in determining Richard had failed to rebut the section 355.1 presumption, is factually and procedurally distinguishable and does not compel a different result.[7] There, our colleagues in Division Five granted a petition for writ of mandate reversing the juvenile court's determination that a father had rebutted the section 355.1 presumption and that, without the benefit of the presumption, the Department had failed to prove the father's two-year-old boy was at substantial risk of abuse when in his

---

[7] The Department offered two cases in support of its jurisdiction arguments, *In re S.B.* (2013) 222 Cal.App.4th 612, a case from the Fourth Appellate District involving denial of reunification services to a father with a history of sexual abuse that did not mention section 355.1, and *Los Angeles County, supra,* 222 Cal.App.4th 149, a case from Division Five of this district. Although the court stated it was relying on "the case from the Fourth Appellate District" in making its jurisdiction findings, it is clear from the court's comments it was referring to *Los Angeles County,* not *In re S.B.*

11

care and custody. In that highly disturbing case, the father had been convicted 25 years earlier of sodomizing two boys, ages six and 10 years old. He served seven years in prison as a result of those convictions and was civilly committed for another 13 years as a sexually violent predator. (*Los Angeles County*, at pp. 155-156.) The father was released from civil commitment in April 2009 without conditions. The record before the juvenile court contained no evidence explaining the basis for his release. (*Id.* at p. 163.) The father ceased therapy for sexual predators upon release. His son was born the following year. In December 2012 the Department filed a section 300 petition alleging the father's history as a sex offender made him a danger to his young child. The juvenile court held a contested jurisdiction hearing in which it admitted numerous reports and psychological evaluations of the father prepared during his civil commitment and following his release and determined he had rebutted the presumption and the Department had not proved he was a current risk to his children.

The Court of Appeal issued a writ of mandate to compel the juvenile court to vacate its order of dismissal and to assert jurisdiction based on the father's history of sexual abuse. It concluded the evidence was insufficient as a matter of law to support the juvenile court's ruling that the Department had failed to meet its burden of demonstrating current dangerousness. (*Los Angeles County, supra,* 222 Cal.App.4th at pp. 164-165; see *In re I.J.* (2013) 56 Cal.4th 766, 773 ["[t]he Department has the burden of proving by a preponderance of the evidence that the children are dependents of the court under section 300"].) In reaching this conclusion the appellate court cited the wealth of evidence submitted by the Department to show the father was a danger to his children, including the expert testimony of a psychiatrist who had assessed the father in April 2013 and concluded, based on the father's history and prior psychological evaluations, that he posed a substantial risk of grooming his young son for sexual abuse. Citing that assessment, the father's cessation of rehabilitative therapy after his release and his failure to comply with the registration requirements for sex offenders, along with the comparatively marginal probative value of the psychological reports prepared between 2005 and 2009 when the father was in therapy and prohibited by his civil commitment

from unrestricted contact with minors, our colleagues determined on the record before it the juvenile court was obligated to find the father was a current danger to his two-year-old son. (*Los Angeles County,* at pp. 162-164.)

The *Los Angeles County* court specifically discussed the effect of the section 355.1 presumption in articulating its holding, albeit in a somewhat contradictory fashion. First, the court stated, "Father failed to overcome the presumption under section 355.1, subdivision (d), that his prior convictions and status as a registered sex offender are prima facie evidence to support dependency jurisdiction. He presented no evidence at all. He called no witnesses, offered no documentary evidence, and refused to testify after invoking the Fifth Amendment." (*Los Angeles County, supra*, 222 Cal.App.4th at p. 162.) Without more, we might well take issue with the court's observation the father had presented no evidence to rebut the presumption. Although he did not produce any evidence of his own, he did rely on favorable psychological reports prepared between 2005 and 2009 that were in the record before the court, as well as the record of release from his civil commitment. However, the court clarified in the very next sentence that it was not relying on the father's failure to produce evidence to rebut the section 355.1 presumption, but on the totality of the evidence in the record, which it found insufficient as a matter of law to support the court's finding: "Against this overwhelming weight of the statutory presumption *and the Department's evidence,* respondent court focused on the facts that father's sex crimes occurred almost 25 years earlier, father had been unconditionally released from his commitment as an SVP [(sexually violent predator)] and there were no signs that father was molesting S.G. [(his son)]. When considered *in light of the record as a whole*, these facts are insufficient to overcome the presumption that S.G. was at substantial risk of abuse or neglect." (*Los Angeles County*, at p. 162, italics added.) Thus, despite language referring to the statutory presumption, the most reasonable reading of *Los Angeles County* is that the totality of the evidence, including inferences appropriately drawn from his conviction, was such that no reasonable fact finder could conclude the father did not pose a current risk to his young child. The juvenile court in the instant matter, however, relied solely on the section 355.1

13

presumption, not the totality of the evidence, in asserting jurisdiction based on Richard's history of sexual abuse.

### c. *Remand is necessary for the juvenile court to weigh evidence*

The Department nonetheless contends that remand for the juvenile court to weigh the evidence is unnecessary here because there was overwhelming evidence in this record to conclude Richard was a current danger to his children: In addition to Richard's 1987 sex abuse conviction and status as a registered sex offender, Richard had not received any rehabilitative therapy following his 1987 conviction. Moreover, Richard has demonstrated a lack of insight into his own behavior by failing to take any responsibility for the sexual misconduct that was the subject of his 1987 conviction and to comply with the registration requirements for sex offenders.

The Department's substantial evidence argument, however strong it may ultimately prove to be, is misdirected here. The question is not whether this evidence is sufficient to support a jurisdiction finding because the court did not weigh this evidence or make any findings as to the significance or weight of the Department's evidence relative to Richard's. Instead, it erroneously relied on the presumption to sustain the petition as to Richard, mistakenly believing no contrary evidence apart from the date of the conviction had been presented to overcome the presumption of dangerousness contained in section 355.1. This was error.

Accordingly, we reverse the court's jurisdiction finding and disposition order.[8] On remand, the juvenile court will have the opportunity to consider all of the evidence the Department cites, including the fact of Richard's prior sex abuse conviction and any reasonable inferences to be derived from it (Evid. Code, § 604), along with the evidence identified by Richard, and to determine without regard to the section 355.1 presumption

---

[8]     Under California law a judgment may not be reversed based on improper rejection of evidence unless the error is prejudicial— that is, it resulted it a miscarriage of justice. (Cal. Const. art. VI, § 13; Evid. Code § 354; *In re D.P., supra,* 225 Cal.App.4th at p. 905.) Here, in a close case in which the court's improper application of the presumption plainly tilted the balance in favor of the Department, we simply cannot deem the error harmless.

whether the Department has proved by a preponderance of the evidence that jurisdiction is proper based on the allegation involving Richard's prior conviction and status as a registered sex offender. Consideration of the all this evidence in the first instance is the province of the juvenile court, not the reviewing court. (See *In re I.J.*, *supra,* 56 Cal.4th at p. 773 [when reviewing for sufficiency of the evidence, "'[w]e do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court'"].)[9]

## DISPOSITION

The January 8, 2014 jurisdiction finding and disposition order as to Richard is reversed. On remand the juvenile court shall conduct a new jurisdiction hearing as to Richard to determine whether the Department has sustained its burden of proof as to the allegations in the petition without regard to the section 355.1 presumption and giving appropriate weight to the family's current situation.

PERLUSS, P. J.

We concur:

WOODS, J.                    SEGAL, J.[*]

---

[9]    In light of our reversal of the juvenile court's jurisdiction finding as to Richard, we need not review at this time Richard's challenge to portions of the disposition order requiring him to participate in sexual abuse therapy for perpetrators and parenting classes. Nonetheless, we note, when jurisdiction is properly asserted over a child, the juvenile court may order a parent to participate in any services it reasonably finds will benefit the dependent child. (See § 361.5, subd. (a); *In re I.A., supra,* 201 Cal.App.4th at p. 1492.)

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.