Filed 6/5/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

In re A.T. et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.G.,<br><br>    Defendant and Appellant;<br><br>A.T. et al., Minors<br><br>    Respondents. | E086411<br><br>(Super. Ct. Nos. J301961, J301962)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Lynn M. Poncin, Judge.  Reversed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Laura Feingold, County Counsel, and Helena C. Rho, Deputy County Counsel, for Plaintiff and Respondent.

1

Marisa L.D. Conroy, under appointment by the Court of Appeal, for Respondent, A.T. and R.T.

I.

INTRODUCTION

Section 300, subdivision (e) of the Welfare and Institutions Code[1] (section 300(e)) permits juvenile courts to assert jurisdiction over a minor child if, "[t]he child is under five years of age and has suffered severe physical abuse by a parent . . . ." This case requires us to decide whether a juvenile court may assert jurisdiction under section 300(e) over a child who is over the age of five at the time of the jurisdiction hearing. We conclude that the court may not do so.

In August 2024, plaintiff and respondent, San Bernardino County Child and Family Services (CFS) filed a petition on behalf of respondents, A.T., then four years old, and R.T., then five years old. About a month later, the children were detained and removed from the care of their legal guardian, defendant and appellant, R.G. (the Guardian). At a combined jurisdiction/disposition hearing seven months later, in April 2025, the juvenile court sustained section 300(e) allegations (the (e) findings), among others, as to both A.T. and R.T. At that time, A.T. was five years old and R.T. was six years old.

---

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

The Guardian appeals, arguing that the (e) finding as to A.T. must be reversed because he was five years old at the time of the jurisdiction hearing and the (e) finding as to R.T. must be reversed because she did not suffer severe physical abuse. We agree and reverse both findings.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The Guardian became the children's legal guardian in 2023. In August 2024, R.T. and A.T. were with the Guardian at a mall when a bystander called the police because A.T. had swollen eyes, purple cheeks, visible ribs, and bruises on his face.

After interviewing the children, the police scheduled A.T. to be examined at the hospital. A.T. was diagnosed as severely malnourished and observed to have cuts on his face and bruising on his genital area and legs in addition to his other injuries. A physician found A.T.'s injuries "'highly suspicious for physical abuse.'" CFS obtained a protective order for the children and placed R.T. in foster care while A.T. remained hospitalized for nearly two weeks.

In August 2024, CFS filed petitions on the children's behalf under section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (g) (inability to provide support). CFS amended the petitions in October 2024, adding allegations under

---

[2] We provide only a brief background of the case given the narrow focus of the Guardian's appeal.

section 300, subdivision (j) (abuse of sibling), and again in December 2024, adding allegations under section 300, subdivision (b).

The (a-1) allegation in the operative second amended petitions alleged that the Guardian "physically abused" A.T., causing him bruising and cuts, and that these injuries placed both A.T. and R.T. "at risk of physical abuse and physical harm." The (b-2) allegations in both petitions alternatively alleged that A.T.'s injuries occurred while in the Guardian's care that she could not "accurately explain," which placed both A.T. and R.T. "at risk of abuse and/or neglect." The (b-3) allegation, alleged only in A.T.'s petition, alleged that he "suffered significant weight loss which caused him to be hospitalized" while in the Guardian's care, and her "failure to ensure [the] proper growth and development" of A.T. placed both him and R.T. "at risk of abuse and/or neglect." The (b-5) allegation, alleged only in A.T.'s petition, alleged that the Guardian "failed to follow doctor's orders, as the provider[s] have educated, counseled and recommended follow up with a specialist for [A.T.]," which placed him at risk of "serious medical neglect, and of abuse and/or neglect."

In January 2025, the minors' counsel filed a motion to add section 300(e) allegations to both petitions. The proposed allegations claimed that the Guardian "willfully and for a prolonged period of time[] failed to provide adequate food to" A.T., "who was under the age of five," and this "severe physical abuse" placed both children "at substantial risk of abuse and/or neglect."

The juvenile court held a contested jurisdiction/disposition hearing in late April 2025, about eight weeks after A.T.'s fifth birthday. After the parties rested, the juvenile court granted the minors' motion to add the section 300(e) allegations, sustained those allegations, and sustained nearly all of the petitions' remaining allegations, including the (a-1), (b-2), (b-3), and (b-5) allegations, as well as other allegations under (b), (g), and (j). The Guardian timely appealed.

III.

DISCUSSION

The Guardian contends, and CFS agrees, that the juvenile court erroneously sustained the section 300(e) allegations because A.T. was over five years old at the time of the jurisdiction hearing and R.T. did not suffer severe physical abuse.

Minors argue we should not address the issue because R.G.'s appeal is moot given that she does not challenge the juvenile court's several other jurisdictional findings. Although R.G. concedes her appeal is moot for that reason, she argues we should exercise our discretion to address the merits. On the merits, minors agree the (e) finding as to R.T. should be reversed because she did not suffer severe physical abuse. They argue, however, that the (e) finding as to A.T. was proper because section 300(e) applies when a child under five has suffered severe physical abuse, regardless of when the jurisdictional hearing occurs, and A.T. was under five when the Guardian severely physically abused him.

5

Although we agree that the Guardian's appeal is moot, we exercise our discretion to reach the merits. Like the parties, we agree that the (e) finding as to R.T. must be reversed because she did not suffer severe physical abuse. But we agree with the Guardian and CFS that the (e) finding as to A.T. must be reversed because he was five years old at the time of the jurisdictional hearing, so section 300(e) did not apply.

A. *Mootness and Discretionary Review*

The Guardian concedes, and we agree, that her appeal is moot because she does not challenge several of the juvenile court's jurisdictional findings. (See *In re D.P.* (2023) 14 Cal.5th 266, 283-284; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875.) We nonetheless have discretion to reach the merits of her appeal, and we elect to exercise that discretion here. (*In re D.P.*, *supra*, at p. 285.)

In deciding whether to exercise our discretion, we "may consider whether the challenged jurisdiction finding 'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings,' or '"could have other consequences for [the appellant], beyond jurisdiction."'" (*In re D.P.*, *supra*, 14 Cal.5th at p. 285.) "The exercise of discretionary review may also be informed by whether the jurisdictional finding is based on particularly pernicious or stigmatizing conduct. [Citations.] Though stigma alone will not sustain an appeal, a court may consider the nature of the allegations against the parent when deciding whether discretionary review is proper. The more egregious the findings against the parent, the greater the parent's

6

interest in challenging such findings." (*Id*. at pp. 285-286.) As a result, the interests of justice may be served by review "where a parent does not challenge all jurisdictional findings, but only one finding involving particularly severe conduct." (*Id*. at p. 286.) Finally, we may consider whether the challenged jurisdictional finding is based on "more serious conduct" than unchallenged jurisdictional findings. (*Id*. at pp. 285-286.)

Several of these factors support exercising our discretionary review here. First, the sustained section 300(e) allegations claim that the Guardian intentionally withheld food from A.T. for a long period of time to the point that he was so severely malnourished that he was hospitalized for almost two weeks. The (e) findings are therefore "based on particularly pernicious or stigmatizing conduct." Given the egregious nature of those findings, the Guardian has a great interest in challenging them. Second, the (e) findings are the only jurisdictional findings the Guardian challenges on appeal, and they involve "particularly severe conduct." Third, the (e) findings are based on more serious conduct than the other unchallenged findings.[3] Under these circumstances, we conclude discretionary review of the (e) findings is appropriate.

---

[3] Minors contend the (b) findings "allege almost the same conduct as alleged in" the (e) findings, so any stigma arising from the (e) findings is "duplicative" of the stigma arising from the (b) findings. We disagree. The (b) allegations concerning A.T.'s weight loss claim only that A.T. lost "a significant amount of weight" while in the Guardian's care, the Guardian failed to follow A.T.'s doctors' instructions, and she failed to ensure A.T.'s proper growth and development such that A.T. had to be hospitalized. In other words, the (b) allegations suggest, at worst, that the Guardian seriously neglected A.T.'s health. The section 300(e) allegations, on the other hand, claim that the Guardian *intentionally starved* A.T. for "a prolonged period of time" such that it constituted "severe physical abuse." That is far more serious, and thus far more stigmatizing, than neglecting a child's health needs.

B. *The (e) Findings*

Section 300(e) provides in relevant part that "[a] child who comes within . . . the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court:" "(e) The child is under five years of age and has suffered severe physical abuse by a parent, or by any person known by the parent, if the parent knew or reasonably should have known that the person was physically abusing the child."

There are thus three elements that must exist to support an (e) finding: "(1) there is a minor under the age of five; [¶] (2) who has suffered severe physical abuse as defined in section 300, subdivision (e)[4]; [¶] (3) by a parent or any person known to the parent if the parent knew or reasonably should have known that the person was physically abusing the minor." (*In re Joshua H.* (1993) 13 Cal.App.4th 1718, 1727.)

The parties agree, as do we, that section 300(e) does not apply to R.T. because she did not suffer severe physical abuse. We therefore reverse the (e) finding as to her.[5]

There is likewise no dispute that A.T. suffered severe physical abuse when he was four years old (i.e., under five years old). The only dispute is whether section 300(e)

---

[4] One form of qualifying "severe physical abuse" is the "willful, prolonged failure to provide adequate food." (§ 300(e).)

[5] We note that the Guardian and CFS do not argue the section 300(e) finding as to R.T. should be reversed on the additional ground that she was over five years old at the time of the jurisdictional hearing.

8

applied to A.T. at the time of the jurisdictional hearing since he had turned five by then.[6]

Minors argue the subdivision applied because A.T. was under five years old when the abuse occurred. In their view, section 300(e) is "triggered by proof that a child under five years of age previously suffered severe physical abuse," regardless of their age at the time of the jurisdictional hearing. On the other hand, the Guardian argues, and CFS agrees, that the subdivision does not cover A.T. since he was over five years old at the time of the jurisdictional hearing. We agree with the Guardian and CFS.

We review the juvenile court's interpretation of a statute de novo. (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.) "When construing a statute, we look first to its words, '"because they generally provide the most reliable indicator of legislative intent." [Citation.] We give the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' [Citation.] '"If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs."'" (*In re Ethan C.* (2012) 54 Cal.4th 610, 627 (*Ethan C.*).)

We discern no ambiguity in section 300(e). The subdivision states that a juvenile court "may adjudge" a child "to be dependent child of the court" under section 300(e) only if, among other things, "the child *is* under five years old." The plain meaning of this language is that the child must be under five years old for the juvenile court to assert

---

[6] A.T. was born on March 5, 2020, so he turned five more than a month before the jurisdictional hearing in late April 2025.

9

jurisdiction over the child under section 300(e). This necessarily means that the child must be under five years old at the time of the jurisdictional hearing for section 300(e) to apply.

If the Legislature intended for section 300(e) to apply to any minor who has suffered severe physical abuse when the minor was under five years old, it could have said so. Section 300(e) could provide, for instance, that the juvenile court may assert jurisdiction over a minor "who suffered severe physical abuse when the minor was under five years old." That would cover children like A.T. who were under five when severely physically abused but turned five years old before the jurisdictional hearing. As the Guardian notes, the Legislature has, in other contexts, made a minor's age at an earlier point in proceedings controlling later in the proceedings. (E.g., § 361.5, subd. (a)(3)(C) [reunification services generally last only six months "where the child *was* under three years of age on the date of the initial removal," italics added].) The fact that the Legislature did not do so in section 300(e) shows that the age of the child at the time of the jurisdictional hearing is controlling, not when the severe physical abuse occurred.

*Ethan C.* does not support Minors' contrary interpretation. That case concerned section 300, subdivision (f) (section 300(f)), which grants juvenile courts jurisdiction over a child if "[t]he child's parent or guardian caused the death of another child through abuse or neglect." (*Ethan C.*, *supra*, 54 Cal.4th at p. 616.) Our Supreme Court rejected a father's argument that dependency jurisdiction under that subdivision requires proof of "a nexus between" the death of his child that he caused and a current risk of harm to his

10

surviving children. (*Id.* at p. 637.) The court first noted that several other subdivisions of section 300 require actual harm, or a substantial risk of harm, as a prerequisite for dependency jurisdiction. (*Id.* at p. 638, citing § 300, subds. (a), (b), (c), (d), & (j).) The *Ethan C.* court construed the omission of any such language from subdivision (f) as proof that "[t]he Legislature apparently concluded that a parent's or guardian's neglectful or abusive responsibility for a *child fatality* may *inherently* give rise to a serious concern for the current safety and welfare of living children under the parent's or guardian's care, and may thereby justify the juvenile court's intervention on their behalf without the need for separate evidence or findings about the current risk of such harm." (*Ethan C.*, *supra*, at p. 638.)

Minors are right that section 300(e), like section 300(f), does not contain "a separate 'current risk'" requirement. But section 300(f) also has no age requirement. The Legislature has thus concluded that a minor's age is irrelevant for section 300(f) jurisdiction, whereas section 300(e) jurisdiction turns on the child's age.

This, coupled with the lack of a current risk requirement in section 300(e), shows that the Legislature apparently concluded that juvenile court jurisdiction is appropriate over a child under the age of five who has been severely physically abused, regardless of any current risk to the child, because such abuse of a young child "may *inherently* give rise to a serious concern for the current safety and welfare of" the child. (*Ethan C.*, *supra*, 54 Cal.4th at p. 638; see § 361.5, subd. (b)(4)0(5) [court may bypass services if section (e) or (f) jurisdictional finding found true by clear and convincing evidence]) It

11

follows that the Legislature concluded that that concern is not inherently present when the child is over the age of five, and that other grounds must exist to justify the juvenile court's intervention. This is evidenced by the fact that, unlike other jurisdictional findings, an (e) finding is "prima facie evidence that the child cannot safely remain un the home" and, if found by clear and convincing evidence, allows the juvenile court to bypass services. (*In re Zoe H.* (2024) 104 Cal.App.5th 58, 61; § 361.5, subd. (b)(5).)We thus conclude that the juvenile court may assert jurisdiction over a child under section 300(e) only if, among other things, the child is under five years old at the time of the jurisdictional hearing.[7] (See *In re Joshua H.*, *supra*, 13 Cal.App.4th at p. 1327; *In re E.H.* (2003) 108 Cal.App.4th 659, 667 ["Section 300[(e)] provides that the court has jurisdiction where '[t]he child is under the age of five . . . .'"]; *In re Madison S.* (2017) 15 Cal.App.5th 308, 317 ["A child is described by section 300[(e)] for purposes of juvenile court jurisdiction if '[t]he child is under the age of five years . . . .'"]; *In re Mariah T.* (2008) 159 Cal.App.4th 428, 436 ["Subdivision (e) allows the court to take jurisdiction of children under the age of five who have suffered severe physical abuse . . . ."].) Because A.T. was over five years old at the time of the jurisdictional hearing in this case, the

---

[7] Minors' interpretation of section 300(e)—that the juvenile court may assert jurisdiction over a minor if the minor suffered severe physical abuse when under five years old—would lead to absurd results. (*In re Lilianna C.* (2024) 99 Cal.App.5th 638, 640 [statutes must be interpreted to avoid absurd results].) If that were the case, then the juvenile court could potentially assert jurisdiction over a 17-year-old child who suffered severe physical abuse as an infant if the abuse was discovered when the child was 17 years old. Minors do not cite, nor can we locate, any authority that supports their position that the Legislature intended this result when enacting section 300(e).

juvenile court improperly asserted jurisdiction over him under section 300(e).  We therefore reverse the (e) finding as to him.

## IV.

## DISPOSITION

The juvenile court's (e) findings as to A.T. and R.T. are reversed.

CERTIFIED FOR PUBLICATION


CODRINGTON        
J.

We concur:


MILLER        
      Acting P. J.


FIELDS       
       J.